**Edward DUDOSH, Administrator of Estate of Kathleen Dudosh, Plaintiff,**

v.

**CITY OF ALLENTOWN, Dean Schwartz and Daniel Warg, Defendants.**

Civ. A. No. 85–4066.

United States District Court, E.D. Pennsylvania.

Oct. 13, 1989.

Thomas Makoul and Richard Orloski, Allentown, Pa., for plaintiff.

Robert Hanna, Philadelphia, Pa., for defendants.

## MEMORANDUM

TROUTMAN, Senior District Judge.

The above captioned action has previously been before this Court pursuant to defendants' motion to dismiss the plaintiff's complaint and defendants' motion for summary judgment. This Court granted defendants' motion for summary judgment as to plaintiff's due process claim which was based on the alleged existence of a "special relationship" of a constitutional nature. (*See* 665 F.Supp. 381, 390). In addition, this Court granted defendants' motion as to plaintiff's equal protection claim against the City of Allentown which was based on an alleged policy of "inadequate training." (*Id.* at 396).

Presently before us is plaintiff's Motion to Reconsider this Court's ruling on the above mentioned claims which is based upon two (2) recent Supreme Court decisions. For the following reasons, plaintiff's motion will be granted in part and denied in part.

## 1. *Special Relationship*

The Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services, et al.,* —— U.S. ——, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), serves as the basis for plaintiff's motion to reconsider his due process claim based upon the alleged existence of a "special relationship."

The *DeShaney* lawsuit was filed subsequent to the severe beating and permanent injury of a young boy by his father, with whom he lived. *Id.* at ——, 109 S.Ct. at 1001, 103 L.Ed.2d at 256. The lawsuit was brought against social workers and local officials who received complaints about the abuse being inflicted upon the boy but did nothing to remove the boy from the father's custody. *Id.* The complaint alleged that the defendants had deprived plaintiff of his liberty in violation of his substantive due process rights under the Fourteenth Amendment. *Id.* at ——, 109 S.Ct. at 1002, 103 L.Ed.2d at 257. This deprivation resulted from a failure to intervene and protect Joshua DeShaney from a risk of violence at his father's hands of which state officials knew or should have known. *Id.* The District Court granted defendants' motion for summary judgment, and the plaintiff ultimately appealed to the United States Supreme Court which affirmed the lower court's decision. *Id.* at ——, 109 S.Ct. at 1002–1003, 103 L.Ed.2d at 258.

In affirming, the Supreme Court stated that nothing in the language of the Due Process Clause requires the State, through its employees, to protect the life, liberty and property interests of its citizens against invasion by private actors. *Id.* The Due Process Clause serves to limit the State's power to act, not to guarantee cer-

tain minimal levels of safety and security. *Id.* at ——, 109 S.Ct. at 1003, 103 L.Ed.2d at 259. Since the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State and its employees cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. *Id.* The Supreme Court concluded, therefore, that as a general rule, a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *Id.*

In *DeShaney,* as in this case, the plaintiff argued that even if the State has no affirmative obligation to provide the general public with adequate protective services, such a duty may arise out of certain "special relationships" created or assumed by the State with respect to particular individuals. *Id.* at ——, 109 S.Ct. at 1005, 103 L.Ed.2d at 261. The Court conceded that such a duty may arise in certain circumstances, but in considering the facts in *DeShaney,* the Court rejected this argument. *Id.* Such an argument can only be made when the State takes a person into custody, *e.g.,* a prisoner or mental patient, and holds him through an affirmative exercise of its power. *Id.* The Constitution then imposes upon the State and its employees a corresponding duty to assume responsibility for his safety and well-being. *Id.* The rationale is simple: when the State, by the affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to care for himself, and the State fails to provide for basic human needs, it violates a person's right to substantive due process. *Id.* at ——, 109 S.Ct. at 1006, 103 L.Ed.2d at 262. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* Given the facts of the case presented to it, the Su-

preme Court concluded that no "special relationship" existed between DeShaney and defendants. There was, therefore, no violation of the Due Process Clause.

■ In plaintiff's brief in support of his motion to reconsider, he states that the individual defendants, at the very least, escorted the decedent to confront her assailant despite knowledge of the PFA Order and prior dangerous conduct on the part of the assailant. (*See* Plaintiff's Brief in Support, p 4). This statement, even if completely accurate, falls short of the *DeShaney* standard. Thus, once again, plaintiff fails to provide the necessary evidence to support a substantive due process claim and warrant a reconsideration of our prior ruling. As stated in our earlier opinion, "[h]ad the plaintiff adduced facts in support of his allegations that the individual defendants indeed 'took' the decedent to the apartment door and 'instructed' her to open the door and enter before them while they stood back from the entranceway, our analysis ... would have differed." (*See* 665 F.Supp. 381, 390). We, again, therefore, conclude that there is no evidence of a violation of decedent's due process rights based on the existence of a "special relationship" between herself and the police officers.

### 2. *Inadequate Training*

■ The case on which plaintiff bases his motion to reconsider the claim of "inadequate training" against the City of Allentown is *City of Canton, Ohio, v. Geraldine Harris, et al.,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In that case, the Supreme Court was asked to determine if a municipality can ever be liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees. *Id.* at ——, 109 S.Ct. at 1200, 103 L.Ed.2d at 421. The Court held that, under certain circumstances, it could. *Id.* "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under

§ 1983." *Id.* at ——, 109 S.Ct. at 1205, 103 L.Ed.2d at 427.

The Supreme Court points out, however, that such a claim cannot be supported by merely alleging that the existing training program for a class of employees represents a policy for which the city is responsible. *Id.* Rather, the issue is whether the training a municipal employee receives is adequate to avoid violations of the constitutional rights of the citizens with whom he comes into contact. If it is not, the issue becomes whether such inadequate training can justifiably be said to represent a city policy for which liability may be imposed. *Id.* To prove that inadequate training represents such a policy, a party may show that, "In light of the duties assigned to specific officers and employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* Only in that event may the failure to provide proper training be found to represent policy for which the city is responsible, and for which the city may be held liable if that policy causes injury. *Id.* at ——, 109 S.Ct. at 1206, 103 L.Ed.2d at 428.

The Supreme Court continues and provides some further guidance for resolving the issue of a city's liability. *Id.* The Court states that the focus must be on the adequacy of the training program in relation to the tasks the particular employees must perform. *Id.* Evidence of a particular employee's conduct or of an injury is not sufficient to hold the City liable under this theory of liability. *Id.* In addition, it must be "the identified deficiency in a city's training program" which actually causes the injury, *i.e.,* the deprivation of rights alleged.

At this point, we feel compelled to state that we are limiting our reconsideration of this issue to the equal protection claim against the City. (*See* 665 F.Supp. 381, 395–396). In plaintiff's supplemental brief in support of his motion to reconsider, it seems that plaintiff is also asserting a due process claim based on "inadequate training." Such a claim is not being reconsidered by this Court.

In light of the Supreme Court's holding in *City of Canton,* our prior ruling as to the equal protection "inadequate training" theory of liability must change. Implicit in this Court's earlier decision was the imposition, on the plaintiff, of a greater burden of proof than the Supreme Court has now imposed. As a result of our review of the record as it then stood and the record as it stands supplemented by an expert report, this Court finds genuine issues of material fact for trial. Plaintiff's motion to reconsider this issue, therefore, will be granted. Plaintiff may proceed to trial on this issue subject to any additional problems raised by motions in limine and the like, which we do not here address.

*Conclusion*

In sum, we grant the plaintiff's motion to reconsider his equal protection "inadequate training" claim against the City. The plaintiff may, at this point, proceed to trial on this issue. We deny the plaintiff's motion to reconsider his due process "special relationship" claim.